IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID KILLEN and SHARON KILLEN, his wife, 7081 ADMIRAL PERRY HIGHWAY LORETTO, PENNSYLVANIA, 15940<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA c/o ATTORNEY GENERAL FOR THE UNITED STATES U.S. DEPARTMENT OF JUSTICE 10TH STREET and CONSTITUTION AVENUE, NW ROOM B324 WASHINGTON, DC  20530<br><br>and<br><br>DUANE WILLIAM DUMM, DPM JAMES E. VAN ZANDT VA MEDICAL CENTER 2907 PLEASANT VALLEY BOULEVARD ALTOONA, PA  16602-4377<br><br>Defendants | CIVIL DIVISION<br><br><br><br>No. 3:16-cv-97<br><br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs David Killian and Sharon Killen, by and through their attorneys, Kevin R. Lomupo, Esquire and Gilardi, Oliver & Lomupo, complains and alleges as follows:

1. David Killen and Sharon Killen are adult individuals, husband and wife, residing at 7081 Admiral Perry Highway, Loretto, Cambria County, Pennsylvania, 15940.

2. Defendant United States of America is the party that owns, operates, maintains, and controls the U.S. Department of Veterans Affairs and its divisions and subdivisions.

3. At all relevant times, the plaintiffs were patients, visitors and/or patrons of defendant's VA health facilities described herein.

4. The U.S. Department of Veterans Affairs was established by Congress to administer the healthcare system for the Veterans of the United States of America, which includes health administration in the VA Healthcare System.

5. The VA Healthcare System, through its facilities, provides a broad spectrum of medical, surgical, and rehabilitative care for eligible veterans who served in the armed forces of the United States of America.

6. The James E. Van Zandt VA Medical Center is a division of the US Department of Veterans Affairs, which provides healthcare to eligible Veterans.

7. The James E. Van Zandt VA Medical Center in Altoona, Pennsylvania (hereinafter "VA Altoona") serves as an acute care facility. In addition, it operates five outpatient clinics.

8. The VA Pittsburgh Healthcare System is a division of the US Department of Veterans Affairs, which provides healthcare to eligible Veterans at its facilities, including the University Drive Campus in Pittsburgh, Pennsylvania and the H.J. Heinz Campus in O'Hara Township, Pennsylvania.

9. The VA University Drive Campus in Pittsburgh, Pennsylvania (hereinafter "VA Pittsburgh") serves as an acute care facility. In addition, it provides a range of outpatient services and has doctor's offices where Veterans are seen on a daily basis for care for a variety of needs.

## NOTICE

10. Plaintiff served the Department of Veterans' Affairs Office of General Counsel with one (1) Standard Form 95 providing notice to the United States Government of these claims.

11. On November 4, 2015 the Office of Regional Counsel of the Department of Veteran's Affairs Region (North Atlantic District - North) concluded its investigation and denied the claim.

## JURISDICTION

12. This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671.

13. Plaintiff submitted an administrative claim Standard Form 95 to the United States Department of Veterans' Affairs. Receipt of the claim was made. The United States Department of Veterans' Affairs has denied the claim; accordingly, all conditions precedent to the Federal Tort Claims Act have been properly met.

14. Venue is properly within this district under 28 U.S.C. § 1402 (b) as the acts complained of occurred in the Western District of Pennsylvania.

15. This case is brought against the United States of America pursuant to 28 U.S.C. § 2671, *et seq.* (Federal Tort Claims Act) and 29 U.S.C. § 1346 (b)(1) for money damages as compensation for personal injuries that were caused by the negligent and wrongful acts and omissions of the employees of the United States Government while acting within the scope of their office and employment, under circumstances where the United States, if a private person, would be liable to the Plaintiffs in accordance with the laws of the state of Pennsylvania.

## BACKGROUND

16. Plaintiff David Killen was born August 20, 1943 in Hartford, Connecticut and grew up in Bedford, Ohio.

17. Plaintiff was a Combat Medic and Paratrooper in the United States Army. He served two years active duty, earning the rank of E-5.

18. Plaintiff served in the first combat unit to go to Vietnam.

19. After honorable discharge from the Army in 1966, plaintiff worked in construction and heavy equipment, working his way up to superintendent in air products and chemicals. He retired as a fuel supervisor in Ebensburg, Pennsylvania.

## FACTS

20. The husband plaintiff presented to the VA Altoona Podiatry Clinic on February 19, 2015 for a chief complaint of diabetic foot care and an ulceration.

21. The husband plaintiff was evaluated and treated by Duane William Dumm, DPM, an agent, servant, and employee of defendant, United States of America.

22. Treatment consisted of trimming of all hyperkeratotic areas of the husband plaintiff's feet, including the sub-first metatarsal head of husband plaintiff's left foot.

23. The husband plaintiff was instructed to return to the clinic in one month. No instructions were given regarding care of the trimmed areas.

24. When the husband plaintiff returned home, he noticed severe bleeding from the left sub-first metatarsal head where it had been trimmed.

25. Because of continued drainage from the wound of the left sub-first metatarsal head and surrounding area, along with pain and swelling and increased size, the husband plaintiff sought treatment from a podiatrist at the VA Pittsburgh.

26. The husband plaintiff returned to VA Altoona on March 24, 2015 due to swelling, pain, warmth and continued drainage of the left foot from the wound area. He was again evaluated by Dr. Dumm. Antibiotics and a surgical shoe were prescribed.

27. The following day, the husband plaintiff was admitted to the VA Pittsburgh and diagnosed and treated for osteomyelitis of the left foot and other complications related to the extensive infection of the left foot.

28. The husband plaintiff required continued treatment for the left foot wound consisting of treatment by podiatry, hospital admissions, intravenous antibiotics and other treatment, with eventual partial first ray amputation on the left great toe and surrounding area on May 20, 2015.

29. Following the surgery, the plaintiff continued to have complications with the left foot which required further treatments and hospitalizations.

## COUNT I

## NEGLIGENCE

**David Killen and Sharon Killen vs. The United States of America and Duane William Dumm, DPM**

30. All preceding paragraphs are incorporated herein by reference.

31. Defendant United States of America and Dr. Dumm were negligent in the following particulars:

a. Failing to adhere to the standard of care when treating a diabetic foot;

b. Failing to perform and record a thorough examination of the plaintiff's left foot;

c. Failing to consider the plaintiff's diabetic condition when trimming areas of the plaintiff's left foot;

d. Failing to consider or record the plaintiff's peripheral neuropathy of his feet;

e. Failing to instruct or teach the plaintiff on care of his left foot following the trimming procedure;

f. Trimming areas of the left foot too deeply;

g. Failing to inform the plaintiff that the areas of the left foot were trimmed to deeply;

h. Failing to warn or inform the plaintiff of the possibility of complications of trimming the left foot;

i. Failing to properly diagnose and treat the plaintiff upon returning to Dr. Dumm on March 24, 2015 when his symptoms became worse;

j. In negligently causing a severe infection of the plaintiff's left foot;

k. In negligently causing osteomyelitis of the plaintiff's left foot;

l. In negligently removing the plaintiff's PICC line on or about May 13, 2015 without obtaining and checking lab or culture results;

      m.    In negligently failing to record a detailed medical history from the plaintiff;

      n.    In negligently failing to refer the plaintiff to infectious disease and/or a wound care specialist prior to his admission to the VA Pittsburgh on March 25, 2015;

      o.    In negligently failing to order blood work or imaging studies to assist with the management of the husband-plaintiff's overall health;

32. Defendant's negligence was the legal cause of husband plaintiff's injuries and damages described herein.

33. Defendant's negligence increased the risk that husband plaintiff would suffer the injuries and damages described herein.

34. As a direct and proximate result of defendant's negligence, the plaintiff suffered and the defendant is liable to plaintiffs for injuries to the husband plaintiff and damages described herein.

35. As a direct and proximate result of the negligence and/or carelessness of defendant, plaintiff suffered the following injuries and damages:

      a.    Extensive infection with MRSA of the left great toe area and left foot;

      b.    Cellulitis of the left great toe area and left foot;

      c.    Osteomyelitis of the left great toe area and left foot;

      d.    Amputation of the left great toe and partial left foot amputation;

      e.    Multiple hospital admissions for infection of the left foot;

f. The need for intravenous antibiotics which are not without risk;

g. Multiple procedures and various other treatments of the infected areas of the left foot;

h. Use of TheraSkin to the open area of his left foot;

i. Specially made orthotics for the left foot;

j. Multiple months of physical and emotional pain and suffering due to the pain of the left foot;

k. Periods of immobility and altered mobility which caused plaintiff to be homebound for many months;

l. Loss of enjoyment of life;

m. Embarrassment and humiliation;

n. Need for potential future testing and medical treatments;

o. Monetary loss not limited to medical visits, hospital, travel expenses;

p. Loss of balance and altered mobility leading to falls.

WHEREFORE, plaintiff's respectfully requests this Honorable Court enter judgment in their favor and against defendant in an appropriate amount and that plaintiff's be awarded damages, attorney's fees, costs and all other relief as permitted by the Court.

## COUNT II

## PROFESSIONAL NEGLIGENCE

**David Killen and Sharon Killen vs. The United States of America and Duane William Dumm, DPM**

36. The preceding paragraphs of this complaint are incorporated herein by reference.

37. At all relevant times, defendant was a healthcare provider as defined by the law, rules and regulations of the United States.

38. Defendant had a duty as a health care provider to properly and adequately observe, diagnose, assess, treat and prevent harm to plaintiff.

39. At all relevant times, defendant held itself out to be a skilled medical care facility which possessed the knowledge, skill, training, experience and certification to own, operate, lease, maintain, control and administer a hospital for patients such as plaintiff, and claimed itself to be so qualified.

40. At all relevant times, defendant owned, operated controlled, possessed, administered and maintained a hospital governed by Pennsylvania, Federal and local laws, rules, regulations, codes and statutes.

41. At all relevant times, defendant owed a duty of care to properly and adequately care for, supervise, treat and prevent injury to plaintiff.

42. Plaintiff's injuries and damages were a direct and proximate result of defendant's professional negligence, including breaches of the standard of care for health care providers in the following particulars:

a. In failing to provide reasonable and appropriate care to the plaintiff so as to protect him from the development of infection and other complications as aforementioned;

b. In failing to properly identify plaintiff's risk of developing complications such as extensive infection, osteomyelitis and amputation;

c. In failing to have an appropriate plan of care in place to prevent the foot infection;

d. In failing to properly hire, train, educate medical personnel in the care of the diabetic foot;

e. In failing to have an appropriate plan of care in place for care of the diabetic foot;

f. Failing to adhere to the standard of care when treating a diabetic foot;

g. Failing to perform and record a thorough examination of the plaintiff's left foot;

h. Failing to consider the plaintiff's diabetic condition when trimming areas of the plaintiff's left foot;

i. Failing to consider or record the plaintiff's peripheral neuropathy of his feet;

j. Failing to instruct or teach the plaintiff on care of his left foot following the trimming procedure;

k. Trimming areas of the left foot too deeply;

l. Failing to inform the plaintiff that the areas of the left foot were trimmed to deeply;

m. Failing to warn or inform the plaintiff of the possibility of complications of trimming the left foot;

n. Failing to properly diagnose and treat the plaintiff upon returning to Dr. Dumm on March 24, 2015 when his symptoms became worse;

o. In negligently causing a severe infection of the plaintiff's left foot;

p. In negligently causing osteomyelitis of the plaintiff's left foot;

q. In negligently removing the plaintiff's PICC line on or about May 13, 2015 without obtaining and checking lab or culture results;

r. In negligently failing to record a detailed medical history from the plaintiff;

s. In negligently failing to refer the plaintiff to infectious disease and/or a wound care specialist prior to his admission to the VA Pittsburgh on March 25, 2015;

t. In negligently failing to order blood work or imaging studies to assist with the management of the husband-plaintiff's overall health;

WHEREFORE, plaintiffs demands judgement against defendant, together with attorney's fees, court costs, interest and all other relief permitted by the Court.

## LOSS OF CONSORTIUM

Sharon Killen, Plaintiff
vs.
The United States of America

43. Paragraphs First through Forty-Two are hereby incorporated by reference as it the same were more fully set forth herein:

44. As a result of the negligence of the defendants and the husband plaintiff's injuries as aforesaid the wife-plaintiff has sustained a loss of consortium including a loss of her husband's care, comfort, society and companionship and will continue to suffer such losses into the future.

WHEREFORE, plaintiff demands judgement against defendant, together with attorney's fees, court costs, interest and all other relief permitted by the Court.

JURY TRIAL DEMANDED

Respectfully submitted,

GILARDI, OLIVER & LOMUPO

By: _____
Kevin R. Lomupo, Esquire
Counsel for Plaintiff